UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-25144-CV-SCOLA
MAGISTRATE JUDGE REID

KENNETH WARREN FORD,

    Plaintiff

v.

PHILLIP LEBOWITZ, et al.

    Defendants

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Before the Court is a Motion to Dismiss in which Defendants contend Plaintiff, a state prisoner, cannot obtain relief on his claims of excessive force and failure to intervene in light of *Heck v. Humphrey*, 512 U.S. 477 (1994). [ECF No. 45]. According to the Defendants, *Heck* is a subject matter jurisdiction defense. [*Id.*].

This matter has been referred to the Undersigned for consideration and report pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 8]. As set forth below, the Undersigned recommends that the Motion be denied. [ECF No. 45].

### II. Factual Background

According to Plaintiff, while on his way to his dormitory, Captain Lebowitz yelled, "Why are you leaving the chow hall?" [ECF No. 1 at 3]. Plaintiff responded,

"[B]ecause I was told to leave." [*Id.*]. Plaintiff continued walking towards Captain Lebowitz. [*Id.*]. As Plaintiff approached, Captain Lebowitz ordered him to stop. [*Id.*].

Captain Lebowitz then stated, "You don't know me do you? I'm from A.C.I., not Miami, but you're about to find out this morning." Captain Lebowitz ordered Plaintiff to go to the medical department. [*Id.*]. Sergeant Shelby ordered Plaintiff to submit to hand restraints behind his back. [*Id.*]. Plaintiff complied, and the two prison officials proceeded to escort Plaintiff to the medical department. [*Id.*].

Plaintiff alleged that Captain Lebowitz began to pull on Plaintiff's left arm as if trying to rush him. [*Id.*]. According to the Plaintiff, he stated, "I'm not going to physically resist you, disobey any order, or become physically combative, so you don't have to try and roughhouse me." [*Id.* at 4]. While continuing to "jerk at Plaintiff's arm, Captain Lebowitz replied, "You're gonna find out this morning, I'm from A.C.I." [*Id.*]

After Plaintiff was stripped in the medical lobby, Captain Lebowitz allegedly "grabbed Plaintiff by the throat and began to squeeze his Adam's apple in a choking manner." [*Id.*]. Plaintiff adds that this force was applied without need or provocation. [*Id.*]. As Plaintiff was being choked, Captain Lebowitz stated, "Don't you ever disrespect me like that again… you hear me? You got the right one this morning." [*Id.*].

2

Plaintiff told Captain Lebowitz that he had a pending lawsuit against five prison employees and added that he "was going to sue" Captain Lebowitz for what he had just done. [*Id.*]. Captain Lebowitz allegedly responded by punching Plaintiff in the left side of his face three times. [*Id.*]. After doing so, Captain Lebowitz stated, "I know you're gonna snitch, you snitch motherf---er." [*Id.*]

Sergeant Shelby, who was still present, stood there, witnessed the application of force, and reportedly did not stop Captain Lebowitz's application of force. [*Id.*]. Captain Lebowitz also said, "You say one more word when I get you around this corner and I'm gonna gas your ass." [*Id.* at 5].

Plaintiff was taken to the infirmary. *Id.* Two nurses were there. *Id.* Plaintiff shouted, "Staff abuse… help me… he just choked and punched me… look at my face." [*Id.*]. Captain Lebowitz reportedly asked for someone's can of chemical agents, grabbed Plaintiff by the back of the head, and sprayed the chemical agents directly in Plaintiff's eyes and onto his facial area. [*Id.*].

Plaintiff further alleged that he could no longer see but felt punches to his head. [*Id.*]. Plaintiff stood and felt more punches as he heard Captain Lebowitz ask for assistance in moving Plaintiff to the ground. [*Id.*]. Plaintiff was "slammed" to the ground then stomped on three times—once to each side of the head and once to the top area of his head. [*Id.*].

As Plaintiff was on the ground curled in a fetal position, Plaintiff heard Captain Lebowitz say, "Let me hold your can." [*Id.*]. Plaintiff alleges that he was again sprayed by Captain Lebowitz. [*Id.*]. This caused Plaintiff to "blackout" for what he believes was one minute. [*Id.*]. Upon regaining consciousness, Plaintiff felt that he was being placed in a chair and felt pain all over his body. [*Id.*]. At that time, Plaintiff could not open his eyes due to the chemical agents. [*Id.* at 6]. Plaintiff had chemical agents on his face for twenty minutes. *Id.* Liberally construing Plaintiff's allegations, a nurse could not hear Plaintiff speaking, so she mistakenly documented that Plaintiff refused treatment even though he actually reported pain "all over" and felt his face swelling. *Id.*

As injuries, Plaintiff alleges that he endured minor swelling to the left and right side of his face, knots on his head, and swelling to the upper part of his lip. [*Id.* at 7]. He also endured "severe pain" from the chemical agents, which caused his skin to peel and left reddish marks or scars on his face and nose. [*Id.*].

B. <u>Defendants' Motion to Dismiss</u>

In their Motion to Dismiss, Defendants contend the Court lacks subject matter jurisdiction pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), as Plaintiff's claims and allegations contradict disciplinary findings that were used to punish him. [ECF No. 45].

Two disciplinary reports appear to be at issue. [ECF No. 45 at 10-11] (referring to [ECF No. 45-1]). Stated broadly, those disciplinary reports assert Plaintiff attempted to start a riot and later lunged at Defendant Shelby, which required him to use chemical agents on Plaintiff. [ECF No. 45-1]. Both disciplinary reports resulted in disciplinary confinement without any loss of good-time credits. [*Id.*]. Defendants concede Plaintiff is serving a life sentence. [ECF No. 45 at 9 n.5].

### III. Discussion

A. *Heck v. Humphrey* has not yet been held to be a Jurisdictional Defense

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may file a motion to dismiss for lack of subject matter jurisdiction, which is a non-waivable defense. *See* Fed. R. Civ. P. 12(b)(1), (h)(1). Additionally, courts must address subject matter jurisdiction if they determine that subject matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(h)(3).

The Defendants contend *Heck v. Humphrey* is a defense of subject matter jurisdiction. But the Eleventh Circuit has cast doubts on whether that is true. *See Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) ("[T]he Supreme Court's own language suggests that *Heck* deprives the plaintiff of a cause of action— not that it deprives a court of jurisdiction."). Ultimately, the Court need not address whether *Heck* is jurisdictional. As it turns out, *Heck* does not apply here.

B. Plaintiff's Claims are not Barred by *Heck v. Humphrey*

The Defendants' *Heck* defense contains an underlying assumption, namely that a prisoner serving a life sentence has his or her liberty so restricted by disciplinary segregation that *Heck* bars any claims that contradict disciplinary committee findings. [ECF No. 45 at 8-10].

Their assumption is misplaced. In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

"The Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions[.]" *Richards v. Dickens*, 411 F. App'x 276, 278 (11th Cir. 2011) (citing *Edwards v. Balisok*, 520 U.S. 641, 646 (1997)). But it has done so only in cases where the disciplinary action involved the loss of good-time credits that would have shortened a prisoner's term of incarceration. *See Edwards*, 520 U.S. at 646-48 (holding *Heck* barred a prisoner's complaint because it would necessarily invalidate the loss of good-time credits); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (explaining *Heck* would bar claims that would necessarily shorten the length of confinement).

Likewise, the Eleventh Circuit has not extended *Heck* to apply to all disciplinary proceedings that might contradict disciplinary committee findings—only those that relate to the fact or duration of a prisoner's confinement. *See, e.g.*, *Davis v. Hodges*, 481 F. App'x 553, 554 (11th Cir. 2012); *Richards*, 411 F. App'x at 278-79; *Roberts v. Wilson*, 259 F. App'x 226, 229 (11th Cir. 2007); *Robinson v. Satz*, 260 F. App'x 209, 212 (11th Cir. 2007).

Here, the Defendants admit that Plaintiff was not deprived of good-time credits. [ECF No. 45 at 11]. And Plaintiff's disciplinary segregation certainly could not lengthen his incarceration (*i.e.*, a life sentence), meaning *Heck* is inapplicable. *See Muhammad v. Close*, 540 U.S. 749, 754 (2004) (explaining *Heck* does not apply to all disciplinary proceedings only those that necessarily lengthen incarceration).

To support their argument to the contrary, the Defendants relied on an unpublished Tenth Circuit opinion. [ECF No. 45 at 9] (citing *Slack v. Jones*, 348 F. App'x 361, 364 (10th Cir. 2009)). According to the Defendants, *Slack* holds "other forms of discipline, such as confinement," are sufficient to implicate *Heck*. [ECF No. 45 at 8-9]. But in truth, the Tenth Circuit concluded that *Heck* applied in that case because the plaintiff conceded that the disciplinary findings made him ineligible for good-time credits. *See Slack*, 348 F. App'x at 364 ("In his response to defendants' motion to dismiss, *he complained that he could not earn good time credits*. These allegations necessarily implicate the validity of the disciplinary charges and

7

sanctions imposed[.]") (emphasis added). Consequently, *Slack* does not help the Defendants because it actually contradicts their proposition.[1]

Lastly, the Undersigned is unaware of any published decision that supports Defendants' theory. The U.S. Court of Appeals have uniformly applied *Heck* to disciplinary findings only when such findings lengthened a prisoner's incarceration. *See, e.g.*, *Savory v. Cannon*, 947 F.3d 409, 423-24 (7th Cir. 2020) (*en banc*); *LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013); *Cardoso v. Calbone*, 490 F.3d 1194, 1196, 1199 (10th Cir. 2007); *Ramirez v. Galaza*, 334 F.3d 850, 852 (9th Cir. 2003); *Torres v. Fauver*, 292 F.3d 141, 143 (3d Cir. 2002); *Portley-El v. Brill*, 288 F.3d 1063, 1067 (8th Cir. 2002).

In sum, because Plaintiff's disciplinary confinement did not prolong Plaintiff's incarceration, *Heck* is inapplicable. Defendants' Motion should, therefore, be denied.

## V. Conclusions and Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion to Dismiss be **DENIED**. [ECF No. 45]. Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the District

---

[1] Additionally, *Slack* is also not persuasive because Plaintiff did not concede that the disciplinary infraction deprived him of good-time credits. [ECF No. 51].

Court Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 1st day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Kenneth Warren Ford
 167315
 Walton Correctional Institution
 Inmate Mail/Parcels
 691 Institution Road
 De Funiak Springs, FL 32433
 PRO SE

 Robert Edward Gregg
 110 SE 6th Street
 10th Floor
 Fort Lauderdale, FL 33301
 United Sta
 954-328-4153
 Email: robert.gregg@myfloridalegal.com