UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18- 25144-CV-SCOLA
MAGISTRATE JUDGE REID

KENNETH WARREN FORD,

Plaintiff,

v.

LEBOWITZ, et al.,

Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Before the Court is a *pro se* Motion for Summary Judgment filed by Plaintiff in a 42 U.S.C. § 1983 proceeding. [ECF No. 61]. The claims currently pending are Plaintiff's claims of (1) excessive force against Defendant Lebowitz; (2) failure to intervene against Defendant Shelby; and (3) state law assault and battery against Defendant Lebowitz. [ECF Nos. 12; 15].

This matter has been referred to the Undersigned for consideration and report on dispositive matters pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 8]. As set forth below, Plaintiff's Motion should be **DENIED**. [ECF No. 61].

## II. Factual and Procedural Background

A. <u>Plaintiff's Allegations</u>[1]

According to Plaintiff, while on his way to his dormitory, Captain Lebowitz yelled, "Why are you leaving the chow hall?" [ECF No. 1 at 3]. Plaintiff responded, "[B]ecause I was told to leave." [*Id.*]. Plaintiff continued walking towards Captain Lebowitz. [*Id.*]. As Plaintiff approached, Captain Lebowitz ordered him to stop. [*Id.*].

Captain Lebowitz then stated, "You don't know me do you? I'm from A.C.I., not Miami, but you're about to find out this morning." Captain Lebowitz ordered Plaintiff to go to the medical department. [*Id.*]. Sergeant Shelby ordered Plaintiff to submit to hand restraints behind his back. [*Id.*]. Plaintiff complied, and the two prison officials proceeded to escort Plaintiff to the medical department. [*Id.*].

Plaintiff alleged that Captain Lebowitz began to pull on Plaintiff's left arm as if trying to rush him. [*Id.*]. According to the Plaintiff, he stated, "I'm not going to physically resist you, disobey any order, or become physically combative, so you don't have to try and roughhouse me." [*Id.* at 4]. While continuing to "jerk at

---

[1] The following articulation of Plaintiff's allegations is taken from the previous Report and Recommendations addressing the Defendants' Motion to Dismiss. [ECF No. 72].

Plaintiff's arm, Captain Lebowitz replied, "You're gonna find out this morning, I'm from A.C.I." [*Id.*]

After Plaintiff was stripped in the medical lobby, Captain Lebowitz allegedly "grabbed Plaintiff by the throat and began to squeeze his Adam's apple in a choking manner." [*Id.*]. Plaintiff adds that this force was applied without need or provocation. [*Id.*]. As Plaintiff was being choked, Captain Lebowitz stated, "Don't you ever disrespect me like that again… you hear me? You got the right one this morning." [*Id.*].

Plaintiff told Captain Lebowitz that he had a pending lawsuit against five prison employees and added that he "was going to sue" Captain Lebowitz for what he had just done. [*Id.*]. Captain Lebowitz allegedly responded by punching Plaintiff in the left side of his face three times. [*Id.*]. After doing so, Captain Lebowitz stated, "I know you're gonna snitch, you snitch motherf---er." [*Id.*]

Sergeant Shelby, who was still present, stood by, witnessed the application of force, and reportedly did not stop Captain Lebowitz's application of force. [*Id.*]. Captain Lebowitz also said, "You say one more word when I get you around this corner and I'm gonna gas your ass." [*Id.* at 5].

Plaintiff was taken to the infirmary. *Id.* Two nurses were there. *Id.* Plaintiff shouted, "Staff abuse… help me… he just choked and punched me… look at my face." [*Id.*]. Captain Lebowitz reportedly asked for someone's can of chemical

3

agents, grabbed Plaintiff by the back of the head, and sprayed the chemical agents directly in Plaintiff's eyes and onto his facial area. [*Id.*].

Plaintiff further alleged that he could no longer see but felt punches on his head. [*Id.*]. Plaintiff stood and felt more punches as he heard Captain Lebowitz ask for assistance in moving Plaintiff to the ground. [*Id.*]. Plaintiff was "slammed" to the ground then stomped on three times—once to each side of the head and once to the top area of his head. [*Id.*].

As Plaintiff was on the ground and curled in a fetal position, Plaintiff heard Captain Lebowitz say, "Let me hold your can." [*Id.*]. Plaintiff alleges that he was again sprayed by Captain Lebowitz. [*Id.*]. This caused Plaintiff to "blackout" for what he believes was one minute. [*Id.*]. Upon regaining consciousness, Plaintiff felt that he was being placed in a chair and felt pain all over his body. [*Id.*]. At that time, Plaintiff could not open his eyes due to the chemical agents. [*Id.* at 6]. Plaintiff had chemical agents on his face for twenty minutes. *Id.* Liberally construing Plaintiff's allegations, a nurse could not hear Plaintiff speaking, so she mistakenly documented that Plaintiff refused treatment even though he actually reported pain "all over" and felt his face swelling. *Id.*

As injuries, Plaintiff alleges that he endured minor swelling to the left and right side of his face, knots on his head, and swelling to the upper part of his lip. [*Id.*

at 7]. He also endured "severe pain" from the chemical agents, which caused his skin to peel and leave reddish marks or scars on his face and nose. [*Id.*].

### III. Standard of Review

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In reviewing a motion for summary judgment, this Court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)). Thus, a district court "'may not weigh conflicting evidence or make credibility determinations'" when reviewing a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat*, 658 F.3d at 1307).

Because summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law[,]" the moving party necessarily carries the burden. *See Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). Parties may rely on materials enumerated in Fed. R. Civ. P. 56(c), meaning there are some materials that may be relied upon to avoid summary judgment even though they would not be admissible at trial. *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting *Celotex*, 477 U.S. at 324).

Issues are genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Great Am.*, 847 F.3d at 1331 (relying upon *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In a similar vein, "an issue is material if it may affect the outcome of the suit under governing law." *Great Am.*, 847 F.3d at 1331 (relying upon *Anderson*, 477 U.S. at 248). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). In sum, where no reasonable juror could find in the non-moving party's favor, summary judgment is appropriate. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

Lastly, in the summary judgment context, courts must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

**IV. Discussion**

A. <u>Substantive Law</u>

*i. Substantive Law—Excessive Force*

Stated broadly, "to prevail on a claim under [Section] 1983, a plaintiff must demonstrate that (1) the defendant deprived [plaintiff] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998)).

The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on a claim of excessive force under the Eighth Amendment, plaintiffs must prove that (1) force was applied maliciously and sadistically for the very purpose of causing harm and that (2) a requisite amount of force was used against them. *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999) (relying upon *Whitley*, 475 U.S. at 327). Thus, under the Eighth Amendment, force may be employed in a custodial setting as long as it is applied in a good faith effort

7

to maintain or restore discipline. *Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).

With respect to addressing whether the force was applied maliciously and sadistically for the very purpose of causing harm, courts look to five factors. These include: (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any effort made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Campbell*, 169 F.3d at 1375.

Regarding the requisite force used, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes…*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10, (1992) (quoting *Whitley*, 475 U.S. at 327). Accordingly, while the injury itself need not be significant to establish an Eighth Amendment violation, something more than *de minimis* force is still required. *See id.*

*ii. Substantive Law—Failure to Intervene*

"Even when an officer is not a participant in [applying] excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012). Of course, the non-intervening

8

officer must actually be in a position to intervene. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008). Thus, "[i]nstances of force that occur within seconds do not place officers in a realistic position to intervene." *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018).

### *iii. Substantive Law—State Law Assault and Battery*

The tort of battery, as defined by Florida law, is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Robinson v. Lambert*, 753 F. App'x 777, 784 (11th Cir. 2018) (quoting *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 3d DCA 2005)).

Florida defines assault as an "intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Robinson*, 753 F. App'x at 784 (quoting *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. 1st DCA 1982)).

If an official applied force "maliciously or sadistically for the very purpose of causing harm," "it must be true that [the same official] acted with a malicious purpose" as to no longer be entitled to statutory immunity under Florida law. *See Robinson*, 753 F. App'x at 784.

B. <u>Analysis</u>

*i. Technical Deficiencies with Plaintiff's Motion*

To borrow Defendants' description of Plaintiff's Motion, it "falls far short of meeting the standard for granting any part of [Plaintiff's] motion[.]" [ECF No. 65 at 2].

Pursuant to Fed. R. Civ. P. 56(c), a party moving for summary judgment must cite to specific "*materials in the record*[.]" (emphasis added). For example, depositions, stipulations, interrogatory answers, affidavits, documents, or other materials are among the materials that may be used to support assertions of fact. *See* Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56.1(b)(1) similarly requires specific references to record material. The Court is not obligated to consider materials that are not properly cited by a moving party on summary judgment. *See* Fed. R. Civ. P. 56(c)(3).

Plaintiff's Motion purports to cite exhibits in support. [ECF No. 61 at 2-5]. He appears to rely on a video, administrative regulations, his Complaint, and on other vague materials that do not appear to be part of the record.[2] [*Id.* at 4-5].

Without properly submitted exhibits or proper citations to factual assertions, the Court need not consider any of the unsupported or vague assertions within his

---

[2] Plaintiff's Motion is also not sworn under penalty of perjury [ECF No. 61] further demonstrating that any new assertions contained within the Motion are unsupported. *See Wells v. Cramer*, 262 F. App'x 184, 187 (11th Cir. 2008) ("Unsworn statements, even from pro se parties, should not be considered in determining the propriety of summary judgment.") (internal quotations omitted).

so-titled "List of Undisputed Material Facts." *See* Fed. R. Civ. P. 56(c)(1)(A), (3).[3] In sum, it cannot be said Plaintiff's conclusory assertions are sufficient for him to meet his initial burden on summary judgment.[4] *See, e.g.*, *Wells*, 262 F. App'x at 187.

Even so, the Court shall assume Plaintiff's sworn allegations in his Complaint [ECF No. 1] could meet his initial burden on summary judgment. Here, even if Plaintiff could meet his initial burden, Defendants can undoubtedly show genuine issues of material fact exist.

*ii. Defendants' Factual Disputes and Uncontested Assertions*

Unlike Plaintiff, Defendants filed a Response in opposition to the Motion with exhibits. Their exhibits tell a completely different story regarding the events that day.

A disciplinary report documents that at 6:20 a.m., on November 11, 2017, Plaintiff attempted to incite a riot by yelling "the food sucks and the tables are f---ing dirty…I cannot live like this anymore we should all riot in this b---h!" [ECF No. 65 at 18]. At that point, Officer Little, a nonparty, ordered Plaintiff to leave the dining hall. [*Id.*]. Plaintiff left the dining hall while escorted in hand restraints, according to the disciplinary report. [*Id.*]. A disciplinary committee found Petitioner

---

[3] Although Fed. R. Civ. P. 56(d) describes procedures that apply where a party lacks access to certain information, it applies to a non-moving party. As such, Plaintiff cannot rely on this provision to explain why he lacks access to certain materials, like the video, on summary judgment because he is the moving party.

[4] The Defendants addressed the previously mentioned deficiencies in Plaintiff's Motion. [ECF No. 65 at 9-14]. Plaintiff never filed a Reply challenging that argument.

guilty of attempting to incite a riot and placed him in disciplinary confinement for 60 days. [*Id.* at 18-19].

The record contains another disciplinary report, which pertains to Plaintiff's allegations of excessive force. Soon after Plaintiff's alleged attempt at inciting a riot, Plaintiff was sitting in a chair in the medical unit waiting to be assessed. [*Id.* at 20]. Plaintiff reportedly stated "F--k this" and "launched" at Defendant Shelby. [*Id.*]. Presumably, the reference to launching means lunging. According to the disciplinary report, Defendant Shelby applied chemical agents to Plaintiff's upper torso and "re-directed" Plaintiff to the floor. [*Id.*]. Defendant Lebowitz was identified as a witness to this force. [*Id.* at 22]. Plaintiff was later found guilty of battery or attempted battery on a correctional officer, and he received 45 days' disciplinary confinement. [*Id.* at 20-21].

One of the incident reports supporting the battery disciplinary infraction also provides that Plaintiff "continued to be loud" even after he left the dining hall. [*Id.* at 24]. Based on this document, Defendant Lebowitz was the shift supervisor. [*Id.* at 24]. Defendant Lebowitz's incident report mirrors Defendant Shelby's account, as it explains Plaintiff "launched" at Defendant Shelby leading Defendant Shelby to dispense "one continuous burst of chemical agent to [Plaintiff's] upper torso" and redirect Plaintiff to the ground. [*Id.* at 30]. A Chemical Agent Accountability Log shows an officer dispensed 11 grams of chemical agents on the day of the incident.

12

[*Id.* at 46]. Defendants argued Plaintiff's assertions that Defendant Lebowitz covered up his use of chemical agents has no support, as Plaintiff provided no sworn allegations or evidence to support his theory. [*Id.* at 6].

An incident report further documented that Plaintiff received a cold shower at 7:13 a.m., as documented by Officer Romero, a non-party. [*Id.* at 28]. Afterwards, Plaintiff's was taken to medical triage for a post use of force medical evaluation. [*Id.*].

Plaintiff's grievances were attached to his motion. In one, he asserted that Defendant Lebowitz was the individual who applied force and that force was unprovoked. [*Id.* at 35]. The grievance indicated that a nurse failed to properly document the injuries caused by that use of force. [*Id.*]. In another grievance, Plaintiff insisted that the disciplinary reports were falsified, as Defendant Lebowitz was the person who applied force, not Defendant Shelby as all documents suggested. [*Id.*].

As for the medical report, it documented that chemical agents were used but does not include any reference to physical force. [*Id.* at 47]. The medical report found Plaintiff's vital signs were within "normal limits," his respiration was "even/unbalanced," and chemical agents made contact with Plaintiff's skin. [*Id.*]. According to the medical report, even though chemical agents made visible contact with Plaintiff's skin, the nurse was unable to identify any injuries. [*Id.* at 48].

13

### *iii. Genuine Issues of Material Fact Exist On All Claims*

With all inferences in the non-moving party's favor, Defendants have shown genuine issues of material fact exist. Summary judgment should, therefore, be denied.

To begin, the parties dispute whether Defendant Lebowitz used physical force or sprayed Plaintiff with chemical agents. According to Defendants, Defendant Shelby is the only individual who applied force and that force was limited to spraying Plaintiff with chemical agents and redirecting Plaintiff to the floor as evidenced by the incident reports and disciplinary reports. To the extent Plaintiff asserts that Defendants' claims are false, that issue should be weighed at trial not summary judgment. *See Jones*, 683 F.3d at 1292 (weighing of evidence not appropriate on summary judgment). Because all of Plaintiff's claims against Defendant Lebowitz depend on whether he applied force or used chemical agents, there is no question a genuine issue of material fact exists as to all claims against Defendant Lebowitz.

Setting aside the issues as to the identity of who applied force and who merely observed force being applied, genuine issues of material fact also exist on a number of other issues central to Plaintiff's claim.

First, the parties dispute the extent of the injuries. Defendants assert the injuries were minimal or even non-existent as documented in the medical report.

Next, a reasonable inference in Defendants' favor supports the conclusion that a reasonable official could have perceived Plaintiff to be a threat, if he actually lunged at one of the Defendants. As for the need for force, there could have reasonably been some need to apply force even if Plaintiff was in hand restraints.

Further, if Defendants' version of events is accepted at trial, the only force at issue would be an 11gram burst of chemical agents sprayed onto Plaintiff's torso and a "redirecting" of Plaintiff to the floor. The disciplinary reports, incident reports, and medical report would support that conclusion. And if that account is believed at trial, the force used is not so disproportionate to the need for it. Thus, Defendants could establish there was no sadistic and malicious intent to use force for the very purpose of causing harm, an element necessary to a finding of excessive force.

To illustrate, when reviewing an excessive force claim under the Eighth Amendment, it is not enough that correctional officials "arguably could have used less force after restraining" a prisoner. *See McBride*, 170 F. App'x at 657. The question must always focus on whether officials applied force "maliciously and sadistically for the very purpose of causing harm." *See id.* So, even if force was "unreasonable or unnecessary," such force by itself is not cruel and unusual. *See Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

15

An Eighth Amendment excessive force claim will not survive if "force was applied in a good-faith effort to maintain or restore discipline[.]" *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 2 (1992)) (internal quotation marks omitted). Therefore, correctional officers may apply force to end a disturbance. *See Hudson*, 503 U.S. at 6. Correctional officials may even apply force before a disturbance reaches "dangerous proportions." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

In *Bennett*, for example, a correctional official was given deference in his decision to grab a prisoner by the throat and shove him against prison bars simply because the prisoner failed to follow instructions and exhibited insubordination. *See id.* at 1533-34. That use of force was viewed as "preserv[ing] discipline and security" within the prison, particularly because "[d]ecisions made at the scene of a disturbance to restore order are entitled to a degree of deference." *See id.* at 1533. No constitutional violation existed in that case. *See id.* at 1534.

"[C]ourts give great deference to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other breaches of prison discipline." *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). And because force may be applied to "maintain or restore discipline," it is possible that Plaintiff might not be able to prove force was applied "maliciously

16

and sadistically for the very purpose of causing harm" at trial. *See Hudson*, 503 U.S. at 6.

With all facts and inferences viewed in Defendants' favor, a jury could reasonably believe Plaintiff "launched" at one of the Defendants as he said "f--k this" in the medical unit and further believe no other force was applied after Plaintiff had been sprayed with chemical agents and redirected to the floor. The jury could also believe Plaintiff suffered no injuries and further conclude force was appropriate to restore discipline and maintain institutional order. *See id.* Assuming those findings, it implies the Defendants applied force as a "prophylactic or preventative" measure, as the force would have been designed to "reduce the incidence of riots and other breaches of prison discipline. *See Williams*, 943 F.2d at 1576; *see also McBride v. Rivers*, 170 F. App'x 648, 656 (11th Cir. 2006).

The fact that Plaintiff was in hand restraints when he was, according to the Defendants, sprayed with chemical agents and "redirected" to the floor does not eliminate the genuine issues of material fact. *See McBride*, 170 F. App'x at 657 ("[A]lthough the defendants in the instant case arguably could have used less force after restraining McBride, McBride failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'").

Correctional officers may apply chemical agents provided that the chemical agents are not "used unnecessarily, without penological justification, or for the very purpose of punishment or harm[.]" *See Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010). And whether 11grams of the specific chemical agent would have been too much under the circumstances is another issue better weighed by a jury once all the evidence has been presented.[5] *See Jones*, 683 F.3d at 1292 (weighing of evidence not appropriate on summary judgment).

Next, the failure to intervene claims must be addressed. Essential to any failure to intervene claim lies a central assumption: excessive force was applied. *See generally*, *Hadley*, 526 F.3d at 1330-31; *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007); *Reid v. Neal*, 688 F. App'x 613, 617 (11th Cir. 2017); *King v. Reap*, 269 F. App'x 857, 860 (11th Cir. 2008). Because the evidence could support the conclusion that no excessive force violation occurred, the failure to

---

[5] The use of chemical agents on disruptive prisoners is not per se unconstitutional. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates[,] ... [and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Courts have found no sadistic and malicious intent to support an excessive force claim where more grams of chemical agents were at issue than the 11grams reported in the Chemical Agent Accountability Log. *See, e.g.*, *Cole v. Stewart*, No. 8:13-CV-244-T-17MAP, 2014 WL 12783865, at *2 (M.D. Fla. July 7, 2014) (78 grams); *Kilgo*, No. 2:10-CV-236-FTM-29, 2013 WL 6086039, at *6-*7 (M.D. Fla. Nov. 19, 2013) (236 grams). Although Plaintiff might be able to show the log is inaccurate at trial, that issue is not appropriately resolved on summary judgment. *See Sears v. Roberts*, 922 F.3d 1199, 1208 n.4 (11th Cir. 2019) (addressing the possibility of an inaccurate chemical agent log and inaccurate medical report are issues for trial).

intervene claim could fail. *See, e.g.*, *McBride*, 170 F. App'x at 657. Thus, a genuine issue of material fact exists as to the failure to intervene claim.

Lastly, we address the state law claims of assault and battery against Defendant Lebowitz. Because Plaintiff's state law assault and battery claims depend on whether Defendant Lebowitz applied excessive force, and a jury could reasonably determine otherwise, genuine issues of material fact exists on the state law claims against Defendant Lebowitz.[6]

## V. Conclusions and Recommendations

Based on the foregoing, it is recommended that Plaintiff's Motion for Summary Judgment be **DENIED.** [ECF No. 61]. Accordingly, this case should proceed to trial.

Objections to this Report may be filed with the District Court Judge within fourteen days of receipt of a copy of the Report. Failure to file timely objections shall bar Plaintiff from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

---

[6] The Court need not address the Defendants' invocation of *Heck v. Humphrey*, 512 U.S. 477 (1994) [ECF No. 65 at 14-15] because the Undersigned already determined it did not apply in this case. *See* [ECF No. 72].

Signed this 13th day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Kenneth Warren Ford
167315
Walton Correctional Institution
Inmate Mail/Parcels
691 Institution Road
De Funiak Springs, FL 32433
PRO SE

Robert Edward Gregg
110 SE 6th Street
10th Floor
Fort Lauderdale, FL 33301
United Sta
954-328-4153
Email: robert.gregg@myfloridalegal.com