United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kenneth Warren Ford, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 18-cv-25144-Civ-Scola |
| | ) |
| Captain Phillip Lebowitz and Sgt. D. Shelby, Defendant. | ) |

**Order on Report and Recommendation and Referring Case for Settlement Conference**

This § 1983 case was referred to United States Magistrate Judge Lisette M. Reid, consistent with Administrative Order 2019-2 of this Court, for a ruling on all pre-trial, nondispositive matters and for a report and recommendation on any dispositive matters. On July 1, 2020, Judge Reid issued a report (ECF No. 72), recommending that the Court deny Defendants Phillip Lebowitz and Damian Shelby's motion to dismiss (Defs.' Mot., ECF No. 45). The Defendants objected to the report (Defs.' Objs., ECF No. 73), arguing Plaintiff Kenneth Warren Ford's claims of excessive force and failure to intervene should be dismissed for a lack of subject-matter jurisdiction under *Heck v. Humphrey*, 512 U.S. 477 (1994). The Defendants maintain Ford's claims cannot go forward because a finding in Ford's favor in this case would necessarily, and improperly, disturb the prison's disciplinary conclusions, finding Ford guilty of "inciting riots" and "attempted battery on a corrections officer." (Defs.' Objs. at 12; Defs.' Mot. at 3.) Ford has not replied to the objections and the time to do so has passed. After a de novo review, the Court **adopts and affirms** Judge Reid's report and recommendation (**ECF No. 72**), with the modifications set forth below, and **denies** the Defendants' motion to dismiss (**ECF No. 45**).

**1. Ford's Allegations**

In his complaint, Ford describes an incident he says occurred on November 11, 2017 at Dade Correctional Institution. He says that, after being "ordered to leave the chow hall," at 6:20 a.m., Lebowitz, a prison captain, began antagonizing him, telling Ford, "You don't know me, do you . . . I'm from A.C.I., not Miami, but you're about to find out this morning." (Compl. ¶¶ 2–5, ECF No. 1.) Lebowitz, according to Ford, instructed him "to go to medical." (*Id.* at ¶ 5.) As Ford turned, he says Shelby, a prison sergeant, put him in restraints, which Ford says he did not resist. (*Id.* at ¶ 6.) Lebowitz and Shelby then began escorting Ford to medical. On the way, Ford maintains Lebowitz began pulling forcefully on Ford's left arm, as if rushing him. (*Id.* at ¶¶ 7–8.)

Ford says he stated to Lebowitz, "I'm not going to physically resist you, disobey any order, or become physically combative so you don't have to try to roughhouse me." (*Id.* at ¶ 9.) Nonetheless, Ford alleges Lebowitz kept jerking his arm and taunting him. (*Id.* at ¶ 10.) When the trio arrived to medical, the Defendants stripped Ford, in front of the sick call and blood draw room. (*Id.* at ¶ 11.) Ford recounts Lebowitz then, without any need or provocation, grabbed him by the throat, choking him for forty-five seconds, causing severe and excruciating pain while telling Ford not to ever disrespect him again. (*Id.* at ¶¶ 12–13.)

Ford says that when he told Lebowitz he had five pending lawsuits against other prison employees and that he was going to sue Lebowitz for what he had just done, Lebowitz responded by punching him in the face three times. (*Id.* at ¶¶ 14–15.) According to Ford, Shelby stood by, watching the attack and failing to intervene. (*Id.* at ¶ 16.) Afterwards, the Defendants then escorted Ford towards the infirmary, with Lebowitz warning Ford that if he said one more word, he would pepper spray him. (*Id.* at ¶ 19.) When Ford shouted for help, yelling, "Staff abuse . . . help me . . . he just choked and punched me . . . look at my face," Lebowitz grabbed the back of Ford's head and pepper sprayed him directly in his eyes and face. (*Id.* at ¶¶ 22–23.) While blinded by the spray, Ford says he was punched in the head, slammed to the ground, and then stomped on three times. (*Id.* at ¶¶ 24–26.) As he was on the ground, in the fetal position, Ford says Lebowitz pepper sprayed him once more, at which point, Ford maintains he blacked out. (*Id.* at ¶¶ 27–28.)

When he awoke, Ford says he felt his face being wiped and heard Lebowitz complain, "Look at him, I can't put him on camera looking like that." (*Id.* at ¶¶ 30–31.) Fords describes his face and eyes burning as he was attended to by a nurse. (*Id.* at ¶¶ 31–34.) When he complained about the pain, Ford says Lebowitz threatened to gas him again, once he got to confinement. (*Id.* at ¶¶ 36–37.) When he was finally brought to a decontamination shower, Ford says Lebowitz continued to threaten him with spray if he did not comply. (*Id.* at ¶¶ 45–46.) As he left the shower, his eyes continued to burn while he was attended to by a nurse. (*Id.* at ¶ 47.) Ford says that as a result of the attack, he suffered minor swelling on both sides of his face, knots on his head, and a swollen lip. (*Id.* at ¶ 50.) He maintains he suffered severe pain, that his skin peeled, and that he suffered permanent red marks and permanent scarring. (*Id.* at ¶ 51.)

   **2. Discussion**

In their motion to dismiss, the Defendants maintain the *Heck* doctrine bars Ford's § 1983 claims. As the Defendants explain, "a state prisoner's claim

for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." (Def.'s Mot. at 6 (quoting *Heck*, 512 U.S. at 487).) The United States Supreme Court later extended this doctrine to apply in cases where a § 1983 claim called into question the validity of prison disciplinary sanctions that resulted in the deprivation of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 645–46 (1997). In Ford's case, the Defendants point to two disciplinary reports in which Ford was found guilty of (1) inciting riots and (2) battery or attempted battery on a corrections officer that they say would be called into question by Ford's claims. (Defs.' Mot. at 3.) These two incidents, the Defendants say, coincide precisely with the events Ford alleges in his complaint. Accordingly, they argue, there would be no way for the Court to find in Ford's favor with respect to his § 1983 claims without impermissibly negating the prison's disciplinary findings.

In recommending the Court deny the Defendants' motion, Judge Reid found the *Heck* doctrine, in the Eleventh Circuit, extends to barring claims only where the underlying prison-disciplinary proceedings resulted in a deprivation of good-time credits or an increase in the length of the plaintiff's incarceration. (Rep. & Rec. at 7–8 ("[B]ecause Plaintiff's disciplinary confinement did not prolong Plaintiff's incarceration, *Heck* is inapplicable.").) The Defendants, on the other hand, insist the limitations of *Heck* are not so clear cut. They maintain *Heck*, or perhaps principles interrelated to the *Rooker-Feldman* doctrine, could bar a prisoner's § 1983 claims where those claims, if successful, would necessarily undermine a prison's disciplinary determination that resulted in punishment—even if that punishment did not, as here, extend the prisoner's underlying incarceration. While the Court can find no case law that directly supports the Defendants' creative argument, the Court agrees with the Defendants that a categorical bar to applying *Heck* in cases like this may lead to arbitrary results. The Court, like the Defendants, is troubled that such an application would bar one prisoner from bringing an excessive-force claim but not another, simply because one prisoner lost gain time as a result of the incident but the other did not.

Regardless, however, even if the Court were inclined to extend *Heck*, or *Rooker-Feldman*-like principles to this case, as urged by the Defendants, the Court would not, in any event, find that either would bar Ford's claims in this case. In finding Ford guilty of inciting a riot, the disciplinary finding described his disruptive behavior in the dining hall on the morning of the incident. (Ex. A, ECF No. 45-1, 1.) The findings then note that after Ford's outburst, he was ordered to leave the dining hall. (*Id.*) In the other report, adjudicating Ford

guilty of battery or attempted batter on a correctional officer, the findings reveal that, while Ford was sitting in a chair, waiting to be seen by medical staff, he suddenly stated, "Fuck this" and then lunged at Shelby. (*Id.* at 3.) The findings then state that chemical agents were thereafter applied, and Ford was "re-directed to the floor," at which point he "ceased all disorderly actions." (*Id.*) Notably, none of these findings are incompatible with a determination in Ford's favor on his § 1983 claims. The series of events Ford describes in his complaint could have happened both before or after he was sprayed as a result of his lunging at Shelby. That is, a factfinder could determine that Lebowitz choked and beat Ford, prior to placing him in a chair in the infirmary, while Shelby stood idly by. This would in no way conflict with the disciplinary reports' findings that Ford had earlier incited a riot. Nor would it conflict with the finding that Ford, either before or after, lunged at Shelby, warranting the described application of spray in the second report. Further, Ford's allegations that he was beaten and sprayed while on the ground in the fetal position are also not irreconcilable with either report: this attack too could have occurred either before or after the spraying that was merited because of Ford's lunging at Shelby. It is not, as the Defendants maintain, "a 'logical necessity' that judgment for the plaintiff in this suit would contradict the existing punishment." (Defs.' Mot. at 14 (quoting *Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007)).) Accordingly, even if the *Heck* doctrine was applicable here, it would not, in any event, bar Ford's § 1983 claims. The Court, therefore, **adopts** Judge Reid's report and recommendation (**ECF No. 72**), **overrules** the Defendants' objections in large part, and **denies** their motion to dismiss (**ECF No. 45**).

Additionally, the Court has reviewed the record in this case and notes the parties in this case have engaged in only informal settlement negotiations. Because the Court believes this case would benefit from a more formal settlement discussion, it **refers** this matter to Judge Reid for a settlement conference, to be completed no later than **August 24, 2020**. All parties, along with their attorneys, where applicable, are required to participate in the settlement conference, as set by Judge Reid. The conference, because of the COVID-19 pandemic, should be conducted via videoconference (or teleconference, depending accessibility issues from Ford's facility).

**Done and ordered**, at Miami, Florida, on July 23, 2020.

Robert N. Scola, Jr.
United States District Judge